## Dwight Brothers Paper Company, Appellee, v. Morris P. Ginzburg, Appellant.

### Gen. No. 29,895.

1. SALES—*unenforceability of sales contract for indefiniteness and uncertainty.* A sales contract providing that the maximum price at which the paper in question was to be billed was a stated amount per pound net cash, 30 days from date of invoice, sidewalk delivery, and that the buyer was to be given the benefit of any reduction in price which the mill should make during the life of the contract, is unenforceable, assuming the contract to mean that any deduction in price was to be made from the stated maximum, as an unvarying factor, because indefinite as to what was the intended standard for determining the amount of the reduction for want of any basis for ascertaining what mill price was intended, and was also indefinite as to whether the price of the first shipment was to be determined solely by plaintiff, not exceeding the maximum, or by comparing the price of the mill at that time with some previous price.

2. SALES—*burden of proof of performance in action by seller on express contract.* In an action by the seller on an express sales contract, providing that the maximum price at which the paper in question was to be billed was a stated amount per pound net cash, 30 days from date of invoice, sidewalk delivery, and that the buyer was to be given the benefit of any reduction in price which the mill should make during the life of the contract, where the

declaration expressly alleged that plaintiff gave defendant the benefit of the reduction made by the mill, the burden was on plaintiff to show that it had complied with the terms of the contract with respect to price in other respects.

3. Appeal and error—*proper judgment on review.* Where the plaintiff, in an action upon a written contract declared specially on the express contract and also pleaded the common counts in *indebitatus* assumpsit and in its proof on trial before the court without a jury, relied solely on the special count and made no proof under the common counts pleaded, and the court erred in the conception of the law relating to such alleged contract, the judgment for plaintiff was reversed and remanded.

Appeal by defendant from the Superior Court of Cook county; the Hon. Timothy D. Hurley, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1924. Reversed and remanded. Opinion filed July 14, 1925. Rehearing denied July 24, 1925.

Shannon & Morrill, for appellant; Carl M. Johnson, of counsel.

Harris, Reinhardt & Russell, for appellee.

Mr. Presiding Justice Barnes delivered the opinion of the court.

In this suit, declaring upon an express contract and the common counts in *indebitatus* assumpsit, plaintiff recovered a judgment against defendant, on a trial without a jury, for $5,200.37, from which defendant appeals.

The alleged express contract consisted of a letter from plaintiff, which was engaged in the wholesale paper business, addressed to the Jewish Courier, under which name defendant publishes a daily newspaper, and of defendant's noted acceptance thereon.

The letter is dated April 5, 1921, and acknowledges "your order" for 3 cars of certain described paper, "shipment to be made, 1 car July 1921, 1 Aug. 1921, 1 Sept. 1921," and then says:

"The maximum price at which this paper is to be billed to you is 5½ c per pound net cash 30 days from

date of invoice, sidewalk delivery. We are to give you the benefit of any reduction in price which the mill makes during the life of this contract.

"Your signed acceptance hereto constitutes a contract between us."

At the foot of the letter are the words, "Accepted M. P. Ginzburg. Date 4/6/21."

Appellant urges, first, that no action can be maintained on the alleged contract because it is indefinite and uncertain with respect to the price at which the paper was to be sold.

With respect to this point there may be some doubt. If the accepted letter merely provided for a "maximum price," we would have no hesitancy in sustaining the point under appellant's authorities cited in support of it. But if the phrase "reduction in price which the mill makes" can be shown to have an established meaning in the trade of dealing with such paper, the price, which would otherwise be indefinite, might be capable of ascertainment. But if the phrase has no such meaning, then we are of the opinion that other evidence *aliunde* would be inadmissible to explain the patent ambiguity, and that the price cannot be definitely ascertained from the contract.

Assuming, however, the contract to mean that any deduction in price was to be made from the maximum price of 5½ cents as an unvarying factor, yet it is altogether indefinite what was the intended standard for determining the amount of the reduction, whether from the price of a particular mill, or any mill plaintiff might deal with, and whether it was to be made to the full extent of that made by the mill; also whether the price of the first shipment was to be determined solely by plaintiff, not exceeding 5½ cents per pound, or by comparing the price of the mill at that time with some previous price.

It would seem, therefore, that unless the phrase providing for a reduction has a generally recognized and established meaning among the trade, the absence

of any definite standard for fixing the prices of the different shipments, including the first, renders the contract too indefinite for enforcement.

Several cases are referred to in Williston on Contracts, vol. 1, sec. 41, where the contract attempted to fix or define the price of goods sold, but too indefinitely for enforcement, among them *United Press v. New York Press Co., Ltd.,* 164 N. Y. 406, where the price for news reports was to be a sum "not exceeding $300" a week. The court held that as the contract merely stated a limit which the price to be paid each week must not exceed, no price was fixed at which the defendant was bound to take and pay for the news reports, and the element of mutuality in that respect was lacking, and no price being fixed by contract, it was something more than an ambiguity and could not be supplied by parol.

Somewhat similar cases in principle, with varying states of facts unnecessary to recite here, will simply be referred to. (*Sun Prtg. & Pub. Ass'n v. Remington Paper & Power Co.,* 235 N. Y. 338; *National Importing & Trading Co. v. Clark,* 270 Fed. 54; *Gaines & Sea v. R. J. Reynolds Tobacco Co.,* 163 Ky. 716.)

It is next argued that even if the contract were enforceable by its terms without parol evidence, the burden of proof was on plaintiff to show performance of its contract, as alleged in the declaration, and therefore, under its own theory of the price of the different shipments, to show whether any reduction of price was made by the mill, and, if so, what. The declaration expressly alleged that plaintiff gave defendant the benefit of the reduction made by the mill. The plea of general issue put this averment in issue, and required plaintiff to prove it. The onus rested on plaintiff to show that it had complied with the terms of the contract with respect to price as in other respects. Price is one of the elements of the cause, necessary to prove. Surely there can be no question

as to this elementary proposition. But no such proof was made, as was necessary if the contract is enforceable.

But, if it is enforceable, then as to other points made by appellant, we think it enough to say for guidance in another trial, that there was sufficient evidence upon which the court could, on proper proof of prices, have found a liability for all the shipments including those taken to the warehouse, and its charges for storage. Whether, however, there can be any recovery on the contract itself must be determined from the facts as made to appear on another trial.

As plaintiff in its proof relied solely on the special count, based on the alleged contract, and made no proof whatever under the common counts pleaded (which, we observe, did not include a stated account), the judgment must be reversed, the court having erred in its conception of the law and refusal to arrest the judgment, and the case will be remanded for a new trial.

*Reversed and remanded.*

GRIDLEY and FITCH, JJ., concur.